# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FREDERICK BRACK, ZANDRA   :
ALEXANDER, ALEXANDER MARTIN, and :  Case No.:  18-CV-00846 (ILG) (SJB)
DORIAN STEWART, on behalf of themselves :
and all others similarly situated,   :
            :  **ECF Case**
       Plaintiffs,  :
            :
     v.       :
            :
MTA NEW YORK CITY TRANSIT,  :
            :
       Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## <u>SETTLEMENT STIPULATION</u>

This Settlement Stipulation is made by and between the Named Plaintiffs (as defined below) and Defendant MTA New York City Transit ("NYC Transit" or "Defendant"), to fully and completely settle *Brack et al. v. MTA New York City Transit*, (E.D.N.Y. Case No. 18 Civ. 00846) (the "Collective Action Litigation");

WHEREAS, in the Collective Action Litigation, the Named Plaintiffs, on behalf of themselves and other purportedly similarly-situated individuals, as applicable, have asserted claims under the Fair Labor Standards Act ("FLSA") for overtime and other relief; and

WHEREAS, Defendant expressly denies that it and its former and current owners, partners, employees, members, agents and/or related business entities have committed any wrongdoing or violated any laws, vigorously disputes the claims asserted in the Collective Action Litigation and continues to assert that it has strong and meritorious defenses to any and all such claims; and

WHEREAS, to avoid uncertainty and the expense and burdens of further litigation and after substantial, arms-length settlement negotiations, the Named Plaintiffs and the Defendant (collectively, the "Parties") desire to resolve the Collective Action Litigation.

NOW, THEREFORE, the Parties agree as follows:

1. Definitions.  As used in this Settlement Stipulation, the following terms have the following meanings:

  a. **"Applicable Collective Period"** means, for each of the Settlement Collectives described in Section 5 below, the time period referenced in Section 5 below for the Reclassification Settlement Collective and the Computer Title Settlement

Collective, respectively.

b.   **"Attorneys' Fees"** means the amount of attorneys' fees and costs to be paid to Plaintiffs' Counsel pursuant to Plaintiffs' Counsel's motion and subject to the Court's approval and the limitations described in Section 9 below.

c.   **"Claim Forms"** means the claim forms attached as part of Exhibit A.

d.   **"Claim Period"** means the later of:  (i) the 60-calendar day period beginning immediately after the Claims Administrator first mails and/or emails a Notice Form and Claim Form to any of the Collective Members; or (ii) if a Notice Form and/or Claim Form is returned as undeliverable, the Collective Member will be provided the remainder of the sixty (60) days or twenty (20) days to opt-in to the settlement, whichever is longer.  Both periods to run continuously, without interruption or extension.

e.   **"Claims Administrator"** means Rust Consulting, which has been designated by Defendant's counsel to administer the Settlement.

f.   **"Claims Administrator Fees and Costs"** means the amount to be paid to the Claims Administrator for administering the Settlement, subject to the Court's approval and the limitations described in Section 10 below.

g.    **"Collective Action Litigation"** means *Brack et al. v. MTA New York City Transit*, (E.D.N.Y. Case No. 18 Civ. 00846).

h.   **"Collective Members"** mean the individuals falling within the Settlement Collectives, as described in Section 5 below.

i.   **"Court"** means the United States District Court for the Eastern District of New York.

j.   **"Current Opt-In Plaintiffs"** means Karen Alba, Steven Bellisari, Andy Blackman, Michael Celano, Neal Chernakoff, Kevin Goddard, Melanie Green, Elias Jimenez, Mark Langosch, Renee Martinez, Eric Miller, Kari Ng, Junior Smith, Oscar Suarez-Moreno, Dana Sutter, Adriana Valladares Gordon

k.   **"Defendant's Counsel"** means Proskauer Rose LLP.

l.   **" Effective Date"** means: (i) if no appeal is taken from the Final Approval Order, thirty-five business (35) days after the Court's entry of the Final Approval Order; or (ii) if an appeal is taken from the Final Approval Order, the date on which all such appeals (including, *inter alia*, petitions for rehearing or reargument, petitions for rehearing *en banc*, and petitions for *certiorari* or any other form of review) have been finally disposed and can no longer be appealed or reviewed.

2

m.  **"Final Approval Order"** means the Court's order granting final approval of the Settlement.

n.  **"Final Approval Hearing"** means the final hearing scheduled before the Court on the question of whether the Settlement, including payment of Attorneys' Fees, the Payments to the Named Plaintiffs, the Claims Administrator Fees and Costs and the Participating Collective Member Payments, should be finally approved as fair, reasonable and adequate as to the Collective Members.

o.  **"Final Approval Motion"** means the motion that the parties will present to the Court 14 days prior to the Final Approval Hearing.

p.  **"FLSA"** means the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

q.  **"Named Plaintiffs"** means Frederick Brack, Zandra Alexander, Alexander Martin and Dorian Stewart, the four named plaintiffs in the Collective Action Litigation.

r.  **"Notice Forms"** means the notice form attached as part of Exhibit A. There are two Notices Forms: one for individuals in the Reclassification Settlement Collective (Exhibit A-1) and one for individuals in the Computer Title Settlement Collective.

s.  **"Notice Package"** means, for each Collective Member, the package compiled by the Claims Administrator, which shall include the applicable Notice Form, Claim Form, and a postage-paid, pre-addressed return envelope that the Collective Member may use to return the Claim Form to the Claims Administrator.

t.  **"Participating Collective Member"** means a Collective Member who submits a Valid Claim Form to opt-into this action for purposes of settlement.

u.  **"Participating Collective Member Payment"** means, for each Participating Collective Member, his or her individual settlement payment, as described in Section 6 below.

v.  **"Parties"** means Defendant and the Named Plaintiffs, and the Opt-In Plaintiffs, and Participating Collective Members.

w.  **"Payments to the Named Plaintiffs"** means the individual payments to the Named Plaintiffs in order to settle each individual's claims, subject to the Court's approval and the limitations/procedures described in Section 4 below.

x.  **"Plaintiffs' Counsel"** means Woodley & McGillivary LLP and The Quinn Law Firm.

y.  **"Preliminary Approval Date"** means the date the Preliminary Approval Order is entered by the Court.

3

z.  **"Preliminary Approval Order"** means the Court's order preliminarily approving this Settlement.  The Parties agree that they shall request that the Court enter a Preliminary Approval Order in substantially in the form attached as Exhibit B.

aa. **"QSF"** means the Qualified Settlement Fund, as set forth in Section 7 below, to be established and administered by the Claims Administrator, which will be used to pay all of the Attorneys' Fees (as defined below in Section 9), Individual Payments to the Named Plaintiffs (as defined below in Section 4), the amount needed to fund the Participating Collective Member Payments (as defined below in Section 6), and the Claims Administrator Fees and Costs (as defined below in Section 10).

bb.  **"Released Parties"** means MTA New York City Transit, and any of its past or present affiliates or subsidiaries now or as they and/or their successors may be constituted in the future, including but not limited to, MTA Bus Company, the Metropolitan Transportation Authority, the Manhattan and Bronx Surface Transit Operating Authority, Metro-North Commuter Railroad Company, Long Island Rail Road, Metropolitan Suburban Bus Authority (Long Island Bus), Triborough Bridge and Tunnel Authority, Staten Island Rapid Transit Operating Authority, and MTA Capital Construction Company, its or their past or present officers, officials, directors, employees, managers, supervisors, representatives, attorneys, and agents, its or their heirs, predecessors, successors and/or assigns.

cc.  **"Settlement"** means the terms described in this Settlement Stipulation.

dd.  **"Settlement Allocation Formula"** means the formula used to determine the proportional share each Named Plaintiff, Opt-In Plaintiff, and Collective Member will be eligible to receive pursuant to the terms of the Settlement Agreement. This formula is based on each individual's actual pay and hours worked data during the Applicable Collective Period, and is calculated by determining each individual's proportional share of the settlement amount using a ratio of the total settlement amount allocated to the respective Settlement Collective (Reclassification Settlement Collective or Computer Settlement Collective, respectively) as set forth in Section 5 below to the number of hours each individual actually worked over 40 hours in a workweek (excluding any paid time off) during the Applicable Collective Period multiplied by one half (1/2) multiplied by each individual's  hourly rate of pay during each pay period within the Applicable Collective Period.

ee.  **"Settlement Collectives"** means the groupings of Collective Members described in Section 5 below.

ff.  **"Valid Claim Form"** means a completed and signed Claim Form that satisfies the requirements described in Section 12(c)(1) below.

gg.  **"Fair Labor Standards Act Wage and Hour Claims"** means any suits, actions, causes of action, complaints, charges, grievances, claims, demands, debts, losses,

obligations and/or liabilities based on an alleged violation of or related to the Fair Labor Standards Act ("FLSA"), including, but not limited to, for the failure to provide wages, overtime pay, failures in record keeping, off-the-clock claims, spread of hours pay or other claims that were alleged or could have been alleged in the Collective Action Litigation under the FLSA.

2. **No Admission of Liability and No Concession as to the Merits.**  Defendant expressly denies that it violated the law in any manner alleged in or related to the Collective Action Litigation.  Defendant continues to believe that the Named Plaintiffs' claims and the claims of the putative Collective Members are without merit.  The Parties enter into this Settlement Stipulation to avoid the risks, uncertainty, expense and burden of further litigation.  This Settlement shall not be construed or deemed to be an admission of liability or wrongdoing on the part of Defendant.

3. **Process for Preliminary Approval of Settlement.**  By November 9, 2018, pursuant to the Court's September 25, 2018 Order, the Parties shall submit to the Court all papers necessary to obtain preliminary approval of this Settlement and conditional certification of the Settlement Collectives for the sole purpose of Settlement. Plaintiffs' Counsel shall be responsible for drafting the Motion for Preliminary Approval, which draft shall be presented to Defendant's Counsel for comment and approval no later than October 30, 2018.  Plaintiffs' Counsel will closely coordinate with Defendant's Counsel to schedule the submission of the papers necessary to obtain Preliminary Approval of this Settlement.

4. **Payments to Settle the Individual Claims of the Named Plaintiffs.**

    (a)   Plaintiffs' Counsel shall move for Court approval of service payments to settle the individual claims of each Named Plaintiff (the "Payments") as follows:

        (i)     Frederick Brack – Two thousand five hundred dollars and no cents ($2,500.00)

        (ii)    Zandra Alexander – One thousand two hundred fifty dollars and no cents ($1,250.00)

        (iii)   Dorian Stewart – One thousand two hundred fifty dollars and no cents ($1,250.00)

        (iv)    Alexander Martin – One thousand two hundred fifty dollars and no cents ($1,250.00)

    These payments, as well as the payments described in Section 5 below, shall fully settle each Named Plaintiff's claims as described herein and are in exchange for a release from each Named Plaintiff of all Wage and Hour Claims, as set forth in Section 15 below.  Such Payments shall be at the sole discretion of the Court, and this Settlement is not contingent upon the Court's approval of such Payments. Defendant shall not oppose Plaintiffs' Counsel's motion for the payment of such

5

Payments, subject to the limitations herein.

(b)     Payments made pursuant to this Section 4 shall be reported to all governmental taxing authorities by the Claims Administrator in the form of an IRS Form 1099.

(c)     Any portion of the Payments not approved by the Court and/or not claimed or cashed by the Named Plaintiffs shall automatically revert back to Defendant.

(d)     In further consideration for the settlement of his claims, within thirty (30) days of the date of this agreement, if not earlier, Defendant will begin treating Named Plaintiff Frederick Brack as if he were FLSA non-exempt and will provide Plaintiffs' Counsel with written confirmation of this change.

5.     **Settlement Collectives.**  The Parties will ask the Court to certify the following collectives for settlement purposes:

a.     **Reclassification Settlement Collective**:  All current and former NYC Transit employees whose FLSA status was changed from FLSA exempt to non-exempt at any time since February 7, 2015, or who worked in positions whose FLSA status was changed from exempt to non-exempt at any time since February 7, 2015. The Reclassification Settlement Collective includes the Named Plaintiffs and Opt-In Plaintiffs.

b.     **Computer Title Settlement Collective**:  All current and former NYC Transit employees who have held one or more computer titles (as set forth in Exhibit C) from February 7, 2015 through September 30, 2017.

Together, the Reclassification Settlement Collective and the Computer Title Settlement Collective are the "Settlement Collectives."  Any member of the Settlement Collectives, who actually worked over forty (40) hours in a workweek (excluding any paid time off), from February 7, 2015 through September 30, 2017 and either received compensatory time off or cash at a straight-time rate, shall be eligible to receive a Notice Package and submit a claim to the Claims Administrator to receive non-pensionable compensation based on a formula agreed to by the parties.

The formula shall be based on a total allocation not to exceed seven hundred and twenty three thousand three hundred and thirty three dollars ($723,333) that shall be divided among all putative Reclassification Settlement Collective Members, as well as the four (4) Named Plaintiffs and the sixteen (16) total Opt-In Plaintiffs who filed Consent to Sue Forms on April 13, 2018 and June 29, 2018, respectively (Dkt. 19, 30) and who actually worked more than forty (40) hours in a workweek during the relevant time period; and an amount not to exceed one hundred and seventy six thousand six hundred and sixty seven dollars ($176,667) that shall be divided among all putative Computer Title Settlement Collective Members pursuant to a formula agreed-to by the parties.

6

6.      **Determining the Participating Collective Member Payments**.  Within thirty (30) business days of the end of the Claim Period, the Claims Administrator will calculate the Participating Collective Member Payments by allocating the amount each Participating Collective Member who files a valid and timely claim form shall receive in accordance with the formula agreed upon by the parties.  Participating Collective Member Payments shall be made by Defendant to the Claims Administrator and distributed to Participating Collective Members by the Claims Administrator.  The Participating Collective Members' Share of Payroll Taxes shall be made from the Participating Collective Member Payment.  Defendant will pay Defendant's Share of Payroll Taxes, if any, as set forth below in Section 8 and 12(i).

7.      **Funding the QSF.**  Within twenty (20) business days after the Final Approval Order, or as soon thereafter as is commercially reasonable to comply with the Claims Administrator's instructions, Defendant shall deposit into the QSF an amount to cover the Participating Collective Member Payments, and Individual Payments to the Named Plaintiffs.  Defendant agrees to fund the Attorneys' Fees, as approved by the Court, in accordance with Section 9 below, and the Claims Administrator's Fees and Costs in accordance with Section 10 below.

8.      **Funding Defendant's Share of Payroll Taxes:**  Within forty-five (45) business days after the Effective Date, Defendant shall pay to the Claims Administrator an amount to cover the Defendant's Share of Payroll Taxes, if any, with respect to the Individual Payments to the Named Plaintiffs, and the Participating Collective Member Payments as set forth in **Section 13(i)** below.  Any portion of the Payroll Taxes that is not needed to fund the Participating Collective Members' claims shall be returned to Defendant.  The Claims Administrator shall provide a calculation to Defendant of the applicable payroll taxes, per Participating Collective Member, within fifteen (15) business days after the Effective Date.

9.      **Attorneys' Fees.**

   (a)      Plaintiffs' Counsel shall move for Court approval of an amount not to exceed four hundred and fifty thousand dollars and no cents ($450,000.00) as payment for Attorneys' Fees and Costs.  The Attorneys' Fees and Costs awarded to Plaintiffs' Counsel shall be at the sole discretion of the Court, and this Settlement is not contingent upon the Court's approval of such Attorneys' Fees and Costs.  Defendant shall not oppose Plaintiffs' Counsel's motion for the recovery of Attorneys' Fee Costs subject to the limitations herein.

   (b)      Any Attorneys' Fees and Costs awarded by the Court in connection with this Settlement (not to exceed $450,000) shall be paid by Defendant into the QSF for payment to Plaintiffs' Counsel no later than twenty (20) business days after entry of the Final Approval Order.

(c)     Payments made pursuant to this Section 9 shall be reported to all governmental taxing authorities by the Claims Administrator on IRS Form 1099s.

(d)     Any portion of the Attorneys' Fees not approved by the Court or not sought by Plaintiffs' Counsel shall automatically revert back to Defendant.

10.     **Claims Administrator Fees and Costs.**

(a)     The Claims Administrator shall serve as the administrator of the Settlement and perform the services described in this Settlement Stipulation and any other services mutually agreed to by the Parties.  The Claims Administrator shall be required to sign an undertaking regarding the confidentiality of information produced as part of the settlement in the form that is attached as Exhibit D.

(b)     The Parties, through their counsel, will cooperate in good faith to resolve any disputes regarding the Claims Administrator's ability or need to perform certain duties under this Settlement Stipulation, and any unresolved disputes shall be referred to the Court.  The Claims Administrator will create the Claim Forms and documentation, using the attachments to this Settlement Stipulation and records provided by Defendant in accordance with this Settlement Stipulation.  The Claims Administrator shall report periodically, in summary or narrative form, the substance of its findings as described in Section 10(d).

(c)     Defendant shall provide the Claims Administrator with certain data regarding the Named Plaintiffs and Collective Members, as described in accordance with Section 11, in order for the Claims Administrator to perform its duties.

(d)     The Parties will have equal access to the Claims Administrator and all information related to the mailing of the Notice Forms and Claim Forms and processing of the Settlement.  The Claims Administrator will also provide regular reports to the Parties' Counsel regarding the status of the mailing of the Notice Package to Collective Members, the claims administration process and the distribution of Participating Collective Member Payments.

(e)     Defendant agrees to pay the Claims Administrator its reasonable and actual fees and costs for the administration of the Collective Action Litigation based on a separately-executed agreement with the Claims Administrator that the costs and fees shall not exceed twenty-two thousand dollars and no cents ($22,000.00).  The Claims Administrator's fees and costs approved by the Court shall be paid by separately by Defendant within twenty (20) business days after the Final Approval Order.

11.     **Information to be Provided by Defendant**.   Defendant shall work cooperatively and in good faith with Plaintiffs' Counsel and the Claims Administrator to attempt to facilitate the claims notice process.  Within ten (10) business days of the Preliminary Approval

Date, for Collective Members whose names Defendant has been able to identify based on available information in its records, Defendant will provide to the Claims Administrator, to the extent the information is reasonably accessible or available, a list containing Collective Members' names, job titles, street addresses, email addresses, and telephone numbers, and, after consultation with Plaintiffs' Counsel, will notify the Claims Administrator the individuals who will receive the Reclassification Notice, and the individuals who will receive the Computer Notice. Additionally, after consultation with Plaintiffs' Counsel, Defendant will provide the Claims Administrator the Collective Member Payment for each Collective Member based on the Settlement Allocation Formula agreed-to by the parties.

12.   **Notice and Claim Process.**

(a)   Form of Notice: Notice to each respective Collective Member shall inform him or her of the Settlement, the claims he or she is releasing, and his or her payment under the Settlement.

(b)   Sending the Notice Package.  Within twenty (20) business days of the Preliminary Approval Date, the Claims Administrator, to the extent such information is available, will send by first class mail and email (to the extent such addresses are available in the data described in Section 11 or Plaintiffs' Counsel's records) the appropriate Notice Package to each Collective Member that has been identified.

(c)   Claims Made Process.  The payments to Participating Collective Members shall be distributed using a claims-made process.  A notice will be sent to Collective Members to submit a claim, and there will be a period of sixty (60) days for Collective Members to submit timely claims.  The Parties agree not to engage in any affirmative outreach to Collective Members, except that Plaintiffs' Counsel may respond to inquiries from Collective Members and return phone calls, emails, letters, etc.

(i)   To be a Valid Claim Form, the Claim Form must be completed and provide the information as instructed on the Claim Form and be signed, dated and postmarked or otherwise returned (via facsimile or e-mail) to the Claims Administrator within the Claim Period.  Claim Forms that are not returned within the Claim Period are null and void, unless otherwise agreed to in writing by the Parties or approved by the Court.

(ii)   If a Claim Form is returned to the Claims Administrator and not completed as described above, within five (5) business days of its receipt, the Claims Administrator shall send a notice to this Collective Member of the defects and include a new Claim Form to be completed.  The Claims Administrator shall simultaneously provide Plaintiffs' Counsel and Counsel for Defendant with a copy of the notice.  The Collective Member shall then have the remainder of the sixty (60) days in the Claim Period or

9

twenty (20) days from the re-mailing, whichever is longer, to return the new Claim Form and provide the missing information.  If a Valid Claim Form is not received within that period, the Claim Form shall be null and void, unless otherwise agreed to in writing by the Parties or approved by the Court.

(d)     <u>Named and Opt-In Plaintiffs</u>**.** Because the Named and Opt-In Plaintiffs have already filed consent to join forms with the Court pursuant to 29 U.S.C. § 216(b), they will not receive Notice Packages, and they will not be required to submit a Claim Form to receive payment. The Named Plaintiffs have given their consent to the settlement. Plaintiffs' Counsel will send a letter to the Opt-In Plaintiffs notifying them of the settlement, the distribution formula, the amount allotted to them under the settlement agreement, the effect of the release, the amount allocated to attorneys' fees and costs, the date of the Final Fairness Hearing, and their ability to attend and object at the Fairness Hearing.  Prior to receiving a settlement payment pursuant to this Agreement, each Opt-In Plaintiff must sign and return a release (either individually or through Plaintiffs' Counsel) to Defendant's Counsel in accordance with Section 15 of this Agreement.

(e)     <u>Returned Notice Packages.</u>  If a Collective Member's Notice Package is returned with a forwarding address, the Claims Administrator shall promptly re-mail the Notice Package to the forwarding address.  If a Collective Member's Notice Package is returned without a forwarding address, the Claims Administrator shall attempt to locate the Collective Member's current address, including by calling the Collective Member if a telephone number is available.  If a new address is obtained, the Claims Administrator will promptly re-mail the Notice Package to the Collective Member.  If a new address is not obtained from the U.S. Post Office, from the Collective Member or, to the extent the information is available, through a standard Level 2 Skip Trace in the manner that the Claims Administrator customarily performs such skip traces, the Claims Administrator shall notify the Parties' Counsel, who will confer in good faith, on a case-by-case basis, regarding whether to instruct the Claims Administrator to conduct further traces.  Any Collective Member whose Notice Package is re-mailed shall have the remainder of the time-period as described in Section 12(c)(ii) above to return a Claim Form. No Notice Packages shall be mailed after the Claim Period, unless otherwise agreed by the Parties or ordered by the Court.

(f)     <u>Declaration of Claims Administrator</u>. The Parties shall provide to the Court with the Final Approval motion, a declaration by the Claims Administrator detailing its due diligence and providing proof of mailing and/or emailing with regard to the Notice and Claim Forms.  The declaration will also identify the number of exclusion requests and any objections.

10

(g)   <u>Payments to Participating Collective Members</u>.

   (i)    Payment of eligible claims will be remitted by Defendant to the Claims
          Administrator within twenty business (20) days after the Final Approval
          Order and the Claims Administrator will then remit checks to all
          Participating Collective Members as soon as practicable and no later than
          10 days after the Effective Date.

   (ii)   The entirety of the payments to Participating Collective Members shall be
          considered non-pensionable compensation.  Fifty percent (50%) of the
          Participating Collective Member Payment shall be in the form of a non-
          payroll check from which no payroll taxes or withholdings shall be made
          to account for liquidated damages.  This payment will be reflected in an
          IRS 1099 Form issued by the Claims Administrator to the Participating
          Collective Member at the end of the tax year.  The remaining fifty percent
          (50%) of the Participating Collective Member Payment shall be in the
          form of a payroll check from which the Claims Administrator shall
          withhold all taxes and withholdings ordinarily borne by employees, which
          shall account for the payment of backpay.  This payment will be reflected
          in an IRS W-2 Form issued by the Claims Administrator to the
          Participating Collective Member at the end of the tax year.

          Unless the Claims Administrator has received updated contact
          information, the settlement checks issued pursuant to this Section will be
          mailed by the Claims Administrator to the Participating Collective
          Member at the address listed on the Participating Collective Member's
          Claim Form.  If a Participating Collective Member's settlement checks are
          returned with a forwarding address, the Claims Administrator shall
          promptly re-mail the settlement checks to the forwarding address.  If a
          Participating Collective Member's settlement checks are returned without
          a forwarding address, the Claims Administrator will perform a standard
          Level 2 Skip Trace in the manner that the Claims Administrator
          customarily performs skip traces in an effort to determine the Participating
          Collective Member's current address, and, to facilitate this process, use
          the Collective Member's social security number, if available.  If a new
          address is obtained, the Claims Administrator will promptly re-mail the
          settlement checks to the Collective Member.  If a new address is not
          obtained from the U.S. Post Office or through a standard Level 2 skip
          tracing, the Claims Administrator shall notify the Parties' Counsel, who
          will confer in good faith, on a case-by-case basis, regarding whether to
          instruct the Claims Administrator to conduct further traces or to contact
          the Collective Member by other means.  For Collective Members whose
          checks are re-mailed, the 90-day period during which Collective Members
          must cash their checks will run from the date that appears on the check.  If
          a settlement check is returned as undeliverable 60 days or more after it is

dated and a new mailing address is obtained, the Claims Administrator will re-issue the settlement check for that Collective Member.  No checks will be re-issued more than 120 days after the date of the first check to that Collective Member.

(iii)    If a Participating Collective Member reports that his or her settlement check was lost, stolen, or undelivered, the Claims Administrator shall promptly issue a stop payment order on the original check and, after investigating, if appropriate, issue a new check to such Participating Collective Member.

(iv)    Settlement checks not cashed within ninety (90) days of receipt by a Settlement Collective Member shall be void, and monies returned to Defendant.  The failure to cash any check within ninety (90) days shall in no way affect the binding nature of the settlement or the binding nature of any release.

(v)    The Claims Administrator shall report to Defendant's Counsel and Plaintiffs' Counsel all checks mailed, re-mailed and/or cashed, and the dates thereof.

(h)    <u>Payroll Taxes</u>.  The Claims Administrator shall calculate and pay the Participating Collective Members' Share of Payroll Taxes to federal and state taxing authorities as required.   The Claims Administrator shall calculate and report to the Defendant its calculation of Defendant's Share of Payroll Taxes due on the amounts paid to each Participating Collective Member as well as the Participating Collective Members' Share of Payroll Taxes.  Defendant shall pay to the Claims Administrator the amounts determined to be needed to satisfy Defendant's Share of Payroll Taxes due, and the Claims Administrator shall pay those amounts to the taxing authorities.  This amount shall not be considered part of the QSF.  To the extent possible, the payments for the Participating Collective Members' Share of Payroll Taxes shall be made using the tax identification number of the QSF, which the Claims Administrator shall obtain.  Notwithstanding the foregoing, if in the judgment of the Claims Administrator the Participating Collective Members' Share of any payroll taxes due as a result of a payment to a Participating Collective Member is required to be paid using a tax identification number from Defendant then the Claims Administrator shall inform Defendant of that opinion and of the amounts paid to the Participating Collective Member, and Defendant, not the Claims Administrator, shall make all payroll tax payments with respect to that Participating Collective Member and Defendant shall not be required to pay that portion of the Participating Collective Members' share of the payroll taxes into the QSF.

(i)    Defendant's Share of Payroll Taxes paid on any unclaimed funds shall revert to the Defendant.

(i)    <u>Reversion</u>.  Any and all portions of the Settlement proceeds that are not claimed under the claims-made process described in this Section shall revert back to Defendant.

13.    <u>Claimants' & Plaintiffs' Counsel's Responsibility for Any Additional Taxes</u>.  Should any government authority determine that all or any part of the payment(s) made under a Form 1099 to any Named Plaintiff and/or Participating Collective Member under this Settlement Stipulation are taxable, that Named Plaintiff and/or Participating Collective Member will be solely responsible for the payment of all such taxes.  Plaintiffs' Counsel agrees that it will be solely responsible for the payment of any and all taxes due as a result of Plaintiffs' Counsel's receipt of all or any part of the payments made for Attorneys' Fees under this Settlement Stipulation.

14.    *Settlement Payments Do Not Trigger Additional Benefits.*  All payments to Named Plaintiffs and/or Collective Members shall be considered non-pensionable compensation and deemed to be paid to such Collective Members solely in the year in which such payments actually are received by the Named Plaintiff and/or Collective Members.  The Parties agree and the Named Plaintiffs and the Collective Members acknowledge that the payments provided for in this Settlement Stipulation are the sole payments to be made to the Named Plaintiffs and the Collective Members, and that the Named Plaintiffs and the Collective Members are not entitled to any new or additional compensation or benefits as a result of having received the payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement).

15.    **<u>Release.</u>**

(a)    Upon the Effective Date, and except as to such rights or claims as may be created by this Stipulation of Settlement, each Named Plaintiff, Opt-In Plaintiff, and each Collective Member who has submitted a claim as set forth in Section 12(c) above, and on behalf of their respective current, former and future heirs, family members, spouses, executors, administrators, trustees, agents, assigns and legal representatives, and each of their respective agents, representatives and attorneys fully release and discharge the Released Parties (as defined in Section 1(z)) from any and all Fair Labor Standards Act claims (as defined in Section 1(dd)) whether known or unknown, suspected and/or unsuspected, from the beginning of the Applicable Collective Period through the Preliminary Approval Date relating to any  FLSA Claims against Defendant, including without limitation all claims for restitution (including interest) and other equitable relief, liquidated damages, interest, compensatory damages, punitive damages, penalties of any nature whatsoever, other compensation or benefits, attorneys' fees and costs.

(b)    Moreover, each Named Plaintiff, Opt-in Plaintiff, and each Collective Member who has properly filed a Valid Claim Form pursuant to Section 12(c) forever agrees (i) not to institute or receive any other relief from any other suit,

13

administrative claim or other claim of any sort or nature whatsoever against the Released Parties, up to and including the date of Preliminary Approval of this Settlement, relating to the FLSA claims being settled herein; and (ii) to expressly waive and assume the risk of any and all FLSA claims for damages against Defendant relating to the claims being settled herein which exist in his or her favor from February 7, 2015 through the Preliminary Approval Date, but of which he or she does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect his or her decision on whether to submit a valid and timely Request for Exclusion Form as set forth in Section 12(g) and/or a Valid Claim Form as set forth in Section 12(c) above.

16.   **Settlement Contingent on Court Approval.**

This Settlement Stipulation is contingent upon the Court's approval of the Settlement.  If the Court does not grant preliminary or final approval or the Effective Date does not occur, this Settlement Stipulation may be voided at either party's option, in which case this Settlement Stipulation (including its Exhibits) will become null and void, and will not be used as evidence for any purpose, including without limitation, in connection with the Collective Action Litigation or any other lawsuit, administrative or other legal proceeding, claim, investigation, or complaint.  The Parties shall retain the right to pursue or challenge all claims and allegations, including the right to decertify and challenge the propriety of collective action certification on all applicable grounds after the close of fact discovery or as otherwise permitted by the Court.

In such an event, the Parties shall resume the Collective Action Litigation unless the Parties jointly agree to:  seek reconsideration or appellate review of the decision denying preliminary or final approval; or attempt to renegotiate the Settlement and seek Court approval of a renegotiated settlement.

In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved:

(a)   The Collective Action Litigation will proceed as if no settlement had been attempted.  In that event, any collectives certified for purposes of settlement shall be decertified, and Defendant shall retain the right to assert all applicable defenses and challenge all claims and allegations, including but not limited to contesting whether this Litigation should be maintained as a collective action and, contesting the merits of the claims being asserted by the Plaintiffs in this action.

(b)   The Claims Administrator will provide notice to Collective Members that the Settlement did not receive final approval and that, as a result, no payments will be made to Collective Members under the Settlement.  Such notice shall be mailed and emailed to the Collective Members using the addresses used by the Claims Administrator in sending the Notice and Consent Forms.

14

17. **Return of Documents/Data.**   Within sixty (60) days of the Effective Date, Plaintiffs' Counsel agrees to return or destroy all non-public documents and information produced by Defendant in the Collective Action Litigation other than its work product, and provide written notice to Defendant's Counsel, addressed to the attention of Steven Hurd, Esq., certifying that it has returned and/or destroyed all such documents.

18. **Mutual Full Cooperation.**  The Parties will fully cooperate with each other and with the Claims Administrator to accomplish the terms of this Settlement Stipulation, including but not limited to, the preparation and execution of documents necessary to implement this Settlement Stipulation.  The Parties will use their best efforts to effectuate this Settlement Stipulation, including during any appeals, and will use their best efforts to obtain the Court's approval of the Settlement and to defend the Settlement from any legal challenge.

19. Complete Agreement.  No representation, promise, or inducement has been offered or made to induce any Party to enter into this Settlement Stipulation, which contains the entire, complete, and integrated statement of all settlement terms and supersedes all previous oral or written agreements.  This Settlement Stipulation may not be amended or modified except by a writing signed by the Parties' authorized representatives.

20. Knowing and Voluntary Agreement.  The Parties enter into this Settlement Stipulation knowingly, voluntarily, and with full knowledge of its significance.  The Parties have not been coerced, threatened, or intimidated into signing this Settlement Stipulation and have consulted with legal counsel regarding the Settlement Stipulation.

21. Notifications and Communications.  Any notifications or communications made in connection with this Settlement Stipulation shall be sent to the Parties at the addresses of their respective counsel as follows:

| *For the Named Plaintiffs and Collective Members*: | *For Defendant MTA NYC Transit:* |
|---|---|
| Gregory K. McGillivary | Steven Hurd |
| Diana J. Nobile | Joshua S. Fox |
| WOODLEY & McGILLIVARY LLP | Proskauer Rose LLP |
| 1101 Vermont Avenue, N.W. | Eleven Times Square |
| Washington, D.C. 20005 | New York, NY 10036 |
| Tel: 202-833-8855 | Tel: 212-969-3000 |

22. Severability.  If any part of this Settlement Stipulation is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other part of this Settlement Stipulation, which shall be construed, reformed and

15

enforced to affect the purposes thereof to the fullest extent permitted by law.

23.   Captions and Interpretations.  Section or paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Stipulation or any provision hereof.  Each term of this Settlement Stipulation is contractual and not merely a recital.

24.   Binding on Assigns.  This Settlement Stipulation shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.

25.   **Enforcement of Settlement** Stipulation and Governing Law.  This Settlement Stipulation will be governed by New York law.  The Parties submit to the jurisdiction of the Court for all purposes relating to the review, approval, and enforcement of this Settlement Stipulation.

26.   **Settlement Stipulation Form and Construction.**

   (a)   The terms and conditions of this Settlement Stipulation are the result of lengthy, carefully considered, arms-length negotiations between the Parties and this Settlement Stipulation shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Settlement Stipulation.

   (b)   This Settlement Stipulation may be executed in electronic counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one binding Settlement Stipulation.

   (c)   This Settlement Stipulation shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Settlement, for a complete resolution of the Collective Action Litigation.

27.   Parties' Authority.  The signatories hereto hereby represent that they are fully authorized to enter into this Settlement Stipulation and bind the Parties hereto and the Collective Members to the terms and conditions thereof.

16

**IN WITNESS WHEREOF**, the Parties each voluntarily and without coercion have caused this Settlement Stipulation to be signed on the dates entered below:

_____     11/8/2018
FREDERICK BRACK                      Date

_____     11/8/18
ZANDRA ALEXANDER                     Date

_____     _____
ALEXANDER MARTIN                     Date

_____     _____
DORIAN STEWART                       Date

MTA NEW YORK CITY TRANSIT

By: _____     _____
       *[Title]*                     Date

17

**IN WITNESS WHEREOF**, the Parties each voluntarily and without coercion have caused this Settlement Stipulation to be signed on the dates entered below:


_____          _____
FREDERICK BRACK                              Date



_____          _____
ZANDRA ALEXANDER                            Date

                                             11/8/2018 9:21:54 AM PST

_____          _____
ALEXANDER MARTIN                             Date



_____          _____
DORIAN STEWART                               Date


MTA NEW YORK CITY TRANSIT


By: _____          _____
          *[Title]*                          Date

17

**IN WITNESS WHEREOF**, the Parties each voluntarily and without coercion have caused this Settlement Stipulation to be signed on the dates entered below:

_____          _____
FREDERICK BRACK                                Date

_____          _____
ZANDRA ALEXANDER                               Date

_____          _____
ALEXANDER MARTIN                               Date

DocuSigned by:
*Dorian Stewart*
—51C6AB756245485...                            11/8/2018 12:47:35 PM PST
_____          _____
DORIAN STEWART                                 Date

MTA NEW YORK CITY TRANSIT

By: _____          _____
         *[Title]*                            Date

17

**IN WITNESS WHEREOF**, the Parties each voluntarily and without coercion have caused this Settlement Stipulation to be signed on the dates entered below:

_____        _____
FREDERICK BRACK                         Date


_____        _____
ZANDRA ALEXANDER                        Date


_____        _____
ALEXANDER MARTIN                        Date


_____        _____
DORIAN STEWART                          Date

MTA NEW YORK CITY TRANSIT

By: _____        11/8/18
      Daniel Chiu                          Date
      Executive Agency Counsel

17