UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FREDERICK G. BRACK,

                        Plaintiff,

    -against-                                            **ORDER**
                                                              18-CV-846-SJB

MTA NEW YORK CITY TRANSIT,

                        Defendant.
-----------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

       On February 7, 2018, Plaintiff Frederick G. Brack ("Brack") filed this action ("*Brack*" or "*Brack* action") against MTA New York City Transit ("NYC Transit"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. (Compl. dated Feb. 7, 2018, Dkt. No. 1). The parties were referred to mediation and reached a settlement on September 24, 2018. (Report of Mediation dated Sept. 24, 2018). During the period for potential plaintiffs to opt into and participate in the settlement, the Court received a letter from counsel in another case pending in the Southern District of New York, *Romero v. Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA")*, 19-CV-694 ("*Romero*" or "*Romero* action"). (*See* Letter attached to Order dated Feb. 28, 2019 ("Schwartz Letter"), Dkt. No. 47). *Romero* is a collective and class action that alleges violations of FLSA, but also of New York Labor Law and the state and federal constitutions. (*Romero* Compl., attached as Ex. 1 to Decl. of Diana J. Nobile, attached as Ex. 2 to Mem. in Supp. of Mot. to Transmit a Suppl. Notice ("Suppl. Notice Mem."), Dkt. No. 41, ¶ 1). The letter expressed concern about the *Brack* settlement and the notice provided to potential opt-in plaintiffs.

1

On March 14, 2019, the two named plaintiffs in *Romero* moved to intervene in *Brack*. (Mot. to Intervene ("Intervenor Mot.") dated Mar. 14, 2019, Dkt. No. 56). The *Brack* parties jointly opposed the motion. (*See* Mem. in Opp'n ("*Brack* Opp'n") dated Mar. 18, 2019, Dkt. No. 59). For the reasons stated below, the objections raised by the *Romero* intervenors are deemed to be meritless, and the motion to intervene is denied.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Brack sued NYC Transit on February 7, 2018, alleging that NYC Transit failed to pay employees overtime as required by FLSA. (Compl. ¶¶ 16–20). On April 13, 2018, Brack filed a motion to certify a FLSA collective action. (Mot. to Certify dated Apr. 13, 2018, Dkt. No. 20). A month later, the parties jointly requested to be referred to the Eastern District's mediation program and to stay the case pending mediation. (Joint Mot. to Stay dated May 11, 2018, Dkt. No. 26). On May 14, 2018, the Court referred the case to the Eastern District's FLSA Mediation Panel. (Order Referring Case to Mediation dated May 14, 2018). The parties asked the Court to hold the motion to certify the collective action in abeyance pending the completion of mediation. (Letter dated May 21, 2018, Dkt. No. 28). As a result, the Court denied the motion to certify without prejudice to renewal. (Order dated May 23, 2018).

After participating in a mediation session on September 21, 2018, the parties reported that they had settled the case. (Report of Mediation dated Sept. 24, 2018). The parties then consented to jurisdiction by the undersigned, (Consent to Jurisdiction dated Nov. 9, 2018, Dkt. No. 34), and jointly moved for settlement approval, (Joint Mot. for Settlement ("Prelim. Settlement Mot.") dated Nov. 9, 2018, Dkt. No. 35).

The parties requested a preliminary approval hearing for the proposed settlement and notices to putative opt-in plaintiffs, who are members of two collectives. These

collectives are titled "Reclassification Plaintiffs" and "Computer Plaintiffs," referring to employees whose titles were converted to non-exempt status under FLSA and employees with computer-related titles, respectively. (Mem. of Law in Supp. of Mot. for Prelim. Approval ("Prelim. Mem."), attached as Ex. 1 to Prelim. Settlement Mot., at 3–4). The Court held the preliminary approval hearing on December 5, 2018, approving the preliminary settlement agreement and notices, and held a final approval hearing on April 9, 2019. (Min. Entry dated Dec. 6, 2018; Order dated Dec. 6, 2018, Dkt. No. 39; Minute Order dated Apr. 9, 2019).

During the opt-in period on January 30, 2019, the *Brack* parties requested permission to transmit supplemental notices to the putative opt-in plaintiffs in order to "[c]orrect [i]naccurate [i]nformation [s]ent by a [t]hird [p]arty." (Suppl. Notice Mem. at 1). According to the *Brack* parties, the putative opt-in plaintiffs in one of the two collectives (the Computer Plaintiffs) received an email from Edwin Romero ("Romero"), who claimed that his union, the Transport Workers Union ("TWU"), already had a pending case against the MTA and that it is "highly advisable that **you do not sign and mail back** the consent that [the *Brack* parties] sent." (*Id.* at 2 (emphasis in original)). The *Brack* parties argued that Romero's email created confusion and contained incorrect information regarding the nature of the release in the *Brack* settlement. (*Id.* at 4). The *Brack* parties also informed the Court that the *Romero* Complaint had attached consent-to-join forms that were signed by named plaintiffs in *Brack*, Alexander Martin and Dorian Stewart. (*Id.* at 3). These two plaintiffs attested that the forms were signed by them in early 2017, and that they did not wish to participate in *Romero*. (*Id.*; Decl. of Dorian Stewart, attached as Ex. 3 to Suppl. Notice Mem., ¶ 5 ("I learned that the action [*Romero*] was filed on January 24, 2019, attaching

3

a 'consent to join lawsuit as plaintiff' form that I signed nearly two years ago in 2017. I had no contact with any attorneys regarding that consent to join form since 2017, and I was not notified that the lawsuit was being filed last week. I do not wish to pursue [FLSA] claims in the *Romero* lawsuit."); Decl. of Alexander Martin, attached as Ex. 4 to Suppl. Notice Mem., ¶ 3 (same)). The Court granted the *Brack* parties' request to transmit supplemental notices in response to these developments. (Order dated Feb. 4, 2019, Dkt. No. 42). Throughout the opt-in period, the *Brack* parties continued to file notices of the consent-to-join forms signed by new opt-in plaintiffs. (*See* Notices, Dkt. Nos. 40, 43–46).

On February 28, 2019, the Court received a letter from Attorney Arthur Schwartz ("Schwartz") regarding *Romero*. (*See* Schwartz Letter). Schwartz indicated that he represented a group of employees who worked for a subsidiary of the MTA called MaBSTOA. (*Id*. at 1). The Court ordered the *Brack* parties to file a response to Schwartz's letter. (Order dated Feb. 28, 2019, Dkt. No. 47).

The *Romero* Complaint was filed on January 24, 2019, after the *Brack* settlement had been consummated and a preliminary fairness hearing had been held. Nonetheless, Schwartz alleged that *Brack* was interfering with the *Romero* litigation. First, he believed that MaBSTOA employees should not have been receiving notices from the *Brack* settlement because none of his *Romero* clients worked for NYC Transit. (Schwartz Letter at 1). Second, Schwartz took issue with the supplemental notice, which he claimed contained an inaccurate critique of the *Romero* lawsuit. (*Id*. at 2). Finally, he claimed that the *Brack* settlement improperly released entities that were not defendants in *Brack*, *i.e.* parties other than the NYC Transit, including MaBSTOA,

4

alleging that "the MTA is looking to give employees a pot of money in order to get a bunch of releases against various subsidiaries." (*Id.*).

The Court ordered Schwartz to file a notice of appearance in this action if his clients intended to make any motion for particular relief or intervention. (Order dated Feb. 28, 2019, Dkt. No. 47). On March 11, having filed his notice of appearance, Schwartz filed a declaration and asked that two named plaintiffs in *Romero* be permitted to intervene in *Brack*. (*See* Decl. of Arthur Z. Schwartz ("Schwartz Decl.") dated Mar. 11, 2019, Dkt. No. 52). The *Brack* parties jointly moved to strike this declaration on procedural grounds and requested that the Court deny with prejudice the request to intervene. (Joint Mot. to Strike dated Mar. 13, 2019, Dkt. No. 54). Schwartz opposed the motion to strike. (Mem. in Opp'n dated Mar. 14, 2019, Dkt. No. 57).

On March 14, 2019, Romero and Denise Wellington ("Wellington") (collectively, "proposed intervenors"), another plaintiff in *Romero*, filed a motion to intervene. (Intervenor Mot.). The *Brack* parties opposed the intervention motion on March 18. (*Brack* Opp'n).

## DISCUSSION

The motion to intervene suffers from a number of shortcomings. For the reasons explained below, the motion is denied. Because the Court denies the motion to intervene on the merits, it denies as moot the motion to strike Schwartz's declaration.

I. <u>Standards for Permissive Intervention</u>

The proposed intervenors seek permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B). (Mem. of Law in Supp. ("Intervenor Mem.") dated Mar. 14, 2019, Dkt. No. 58, at 1). "They seek limited intervention so that they may express their

5

objection, while not waiving their right to proceed with the *Romero* litigation in a separate court." (*Id.* at 9).

Rule 24 allows for two types of intervention: "Subdivision (a) speaks of 'Intervention of Right' and says that the court 'must permit anyone to intervene' if the applicant satisfies the tests of that portion of the rule. Subdivision (b), however, is captioned 'Permissive Intervention' and states conditions under which the court 'may permit anyone to intervene.'" 7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1902 (3d ed. 2018). If a proposed intervenor does not meet the requirements of intervention of right, she "may be permitted to intervene under subdivision (b)([1]) if the applicant has a claim or defense that shares a common question of law or fact with the main action." *Id.* Rule 24(b)(1)(B), which allows for permissive intervention not derived from a statute or asserted by a governmental entity, "provides that on timely motion the court may allow an absentee to intervene when an applicant 'has a claim or defense that shares with the main action a common question of law or fact'"; the Court has discretion "whether to allow an absentee so situated to intervene[,] and the rule expressly provides that in exercising its discretion the court is to consider 'whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Id.* § 1911; *see also In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000) ("A district court may grant a motion for permissive intervention if the application is timely and if the 'applicant's claim or defense and the main action have a question of law or fact in common.' The court must consider whether granting permissive intervention 'will unduly delay or prejudice the adjudication of the rights' of the existing parties.") (citation omitted) (quoting Rule 24(b)(2)); *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994).

6

A. Common Question of Law or Fact

"If the would-be intervenor's claim or defense contains no question of law or fact that is raised also by the main action, intervention under this branch of the rule must be denied." 7C Wright & Miller, *supra*, § 1911. On the other hand, "[i]f there is a common question of law or fact, the requirement of the rule has been satisfied and it is then discretionary with the court whether to allow intervention." *Id.*; *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 487 (2d Cir. 1992) ("The district court has broad discretion to deny an applicant's motion for intervention under Rule 24(b)(2). In fact, a denial of permissive intervention has virtually never been reversed. Under Rule 24(b)(2), an applicant may be permitted to intervene in an action when an applicant's claim or defense and the main action have a question of law or fact in common.") (quotations and citations omitted). The Court therefore must first determine whether the proposed intervenors have demonstrated a question of law or fact in common with the *Brack* action.

The proposed intervenors make almost no attempt to make this showing. Indeed, their brief fails to cite a single case that relates to intervention under Rule 24. While the proposed intervenors do argue that settlement in the *Brack* action will negatively impact the proposed intervenors and the class they wish to represent in *Romero*, (*e.g.*, Intervenor Mem. at 9–10 ("This Motion to Intervene is brought so that representative members of the affected class [in *Romero*] may voice their objections to what appears to be a collusive settlement, negotiated by counsel not chosen by the class, where inadequate notice is given to class members.")), they do not identify any common question of law or fact between their claims and the *Brack* action. To the contrary, their brief makes much of the argument that the plaintiffs' FLSA claims in *Brack* do not apply

7

to the *Romero* plaintiffs because the putative plaintiffs in the two cases work for different entities. According to the *Romero* parties, the employees Schwartz represents—employees of MaBSTOA and MTA Headquarters ("MTAHQ," another MTA subsidiary)—have *never* worked for NYC Transit, which they argue is an entirely separate entity. (*Id.* at 4–5 ("The approximately 170 *Romero* Plaintiffs are employed by MaBSTOA and MTAHQ and have sued over FLSA and New York State Labor Law overtime violations, as well as violation of their rights under the Federal and State Constitutions. . . . The *Brack* case has only the NYCTA (which is also called MTA NYC Transit) as the only defendant and was brought by persons who were described as NYCTA employees[.]"); *id.* at 8 ("[The *Brack* parties] do[ ] not explain how MaBSTOA employees became the subject of this lawsuit. . . . MaBSTOA, for all purposes, is a different employer, and such employees were not included in the Collective Action Class. Given the clear law in the New York courts, these employees cannot be treated as employees of [NYC Transit.]"); *id.* at 6 ("Beginning in late 2018, employees at MaBSTOA started receiving Opt-In letters for the *Brack* case. . . . Some of the people who got opt-in letters had signed Consent Forms to be plaintiffs in *Romero*. None of them work for [NYC Transit]."); Schwartz Decl. ¶ 13 ("None of our clients work for [NYC Transit].")).[1] If the *Romero* class members do not work for the same entities as in this case, there is no common issue of law or fact that would justify intervention of Romero and Wellington.

---

[1] This is in tension with the allegation in *Romero* itself, which states that "[i]n all but the most limited ways, MABSTOA is wholly merged with the NYC[ Transit Authority]." (*Romero* Am. Compl., attached as Ex. A to Schwartz Decl., ¶ 175).

8

In any event, it is difficult to see where a common question arises. Some of the putative class members in *Romero* may have received notices from the *Brack* parties, (Intervenor Mem. at 6), but it does not follow that these particular proposed intervenor plaintiffs—Romero and Wellington—have a claim or defense that contains a common question of law or fact with any of the parties in *Brack*. The proposed intervenors do not state anywhere that they—as opposed to other *Romero* class members—received opt-in notices from the *Brack* action.[2]

If proposed intervenors fail to point to a common question of law or fact, the Court's job is not to find one for them. *See Blake v. Batmasian*, No. 15-CV-81222, 2016 WL 7447253, at *10 (S.D. Fla. Sept. 14, 2016) (denying motion to intervene) ("In their Motion to Intervene, the Proposed Intervenors summarily ask the Court to allow them to intervene through permissive intervention without providing any argument whatsoever in support of their request. The Proposed Intervenors failed to identify a common question of fact or law in support of permissive intervention.") (citations omitted) (emphasis omitted); *cf. United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. . . . Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly[.]") (quotations omitted).

---

[2] The only information provided about Romero and Wellington is that they are "elected leaders of the group" of plaintiffs in *Romero*. (Intervenor Mem. at 6).

B. <u>Discretion to Deny Intervention</u>

This Court has broad discretion in deciding whether to grant permissive intervention. "[I]t is wholly discretionary with the court whether to allow intervention under Rule 24(b), and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." 7C Wright & Miller, *supra*, § 1913; *see also H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (holding that district courts enjoy "very broad" discretion in determining whether to grant a motion for permissive intervention). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see* 7C Wright & Miller, *supra*, § 1913 (stating undue delay and prejudice are the "principal consideration[s]" in exercising Rule 24 discretion).

Even assuming that the proposed intervenors satisfy the requirement under Rule 24(b)(1)(B) that their claims share a common question of law or fact with the *Brack* action, the motion to intervene should be denied.

The *Brack* parties have already agreed to a settlement and have taken substantive steps to finalizing that settlement. The motion to intervene contains two requests that would prompt a significant delay: that a further supplemental notice be sent to the opt-in plaintiffs in *Brack* "providing additional explanation" and the Court "extend the deadline for individuals to whom the settlement in *Brack* is addressed to opt in or withdraw their participation." (Intervenor Mem. at 1–2). There already has been a multi-month period in which putative plaintiffs could opt in. Allowing the proposed intervenors—who themselves may have no claim against NYC Transit—to intervene after

10

this period has elapsed, and to allow a *third* notice to be provided, would unnecessarily delay and prejudice the several hundred parties in *Brack* who have opted in and are awaiting settlement proceeds.[3] *See, e.g.*, *Padro v. Astrue*, No. 11-CV-1788, 2013 WL 1192824, at *5, 7 (E.D.N.Y. Feb. 7, 2013) ("[T]he delay in this case and resulting prejudice are both quite substantial. Movants waited until the concluding phase of the parties' settlement negotiations before seeking permission to intervene and, if their motion were granted, they would derail the settlement process, and, at a minimum, would delay approval of the Settlement Agreement now before the Court, as well as attendant relief for plaintiffs' class. . . . Permissive intervention would thereby 'unduly delay or prejudice the adjudication of the original parties' rights,' *see* Fed. R. Civ. P. 24(b)(3), and, for that reason, should be denied."), *report and recommendation adopted*, 2013 WL 1192819 (Mar. 22, 2013); *Sec. & Exch. Comm'n v. Illarramendi*, No. 11-CV-78, 2012 WL 5832330, at *5 (D. Conn. Nov. 16, 2012) ("[E]ven where the 'common questions of law or fact' requirement for permissive intervention is met, a court has the discretion to deny intervention if it would unduly delay or prejudice the main case. Allowing Movants to intervene at this juncture, on the eve of a settlement[,] and particularly where Movants are fully able to object to the Stipulation of Settlement th[r]ough means other than intervention, would only serve to delay the administration of this enforcement action. Accordingly, . . . Movants' requests for permissive intervention are denied.").

---

[3] In their motion for final settlement approval, the *Brack* parties indicate that "[i]n addition to the 4 Named and 16 Original Opt-In Plaintiffs, 414 additional Plaintiffs have submitted consents to join this action and participate in the settlement (354 Reclassification Plaintiffs and 60 Computer Plaintiffs)." (Mem. of Law in Supp. ("Final Settlement Mem."), attached as Ex. 1 to Joint Mot. for Settlement dated Mar. 26, 2019, Dkt. No. 61, at 6–7).

There is also no good reason to permit the intervention. Counsel for *Romero* has made a series of meritless assertions that do not justify the delay of the present settlement.

As an initial matter, whatever objections that either the proposed intervenors or other class members in *Romero* have to the *Brack* settlement, they have no obligation to be bound by it. Unlike the *Romero* action—which is a collective *and* class action—*Brack* is only a collective action; as a result, the *Brack* action has no impact whatsoever on absent class members. "Unlike a Rule 23 class action, which typically 'binds all members of the class unless they have expressly opted out of the class action,' in a collective action under the FLSA, a class member 'must opt *in* to be bound.'" *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 604–05 (W.D.N.Y. 2011) (quoting *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579–80 (7th Cir. 1982)) (denying intervention in FLSA action, noting that the intervenors' interests can be fully protected by the opportunity to not opt into the FLSA action or to object to any settlement at a fairness hearing, which are "less disruptive" alternatives). If the proposed intervenors (or any of the *Romero* class members for that matter) do not wish to be bound by the settlement—because they object to the scope of the release, the amount of the settlement compensation, or for any reason at all—they need only chose not to opt in. If they do not opt in, they are not bound in any way by the *Brack* settlement.

Yet the proposed intervenors insist that "[a]lthough the *Brack* case was litigated as a collective action, the settlement was more in the nature of a class action," and they attempt to apply Rule 23 standards to undercut the *Brack* settlement. (Intervenor Mem. at 8–9). Rule 23 does not govern collective actions, and the host of risks to which the proposed intervenors allude, (*see id.* at 9 ("'[T]he law accords special protections . . .

12

to individual class members whose interests may be compromised in the settlement process.'") (quoting *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1169 (5th Cir. 1978))), are not applicable. Nothing about the *Brack* settlement makes it "more in the nature of a class action." Like any other § 216(b) action, the *collective* opt-in members must affirmatively choose to join the settlement. The proposed intervenors' attempt to characterize the *Brack* plaintiffs as a class rather than a collective—merely because "plaintiffs['] counsel negotiated a settlement on behalf of a class of people without that class of people having authorized said counsel to engage in such negotiations," (*id.* at 8–9)—makes little sense. That is the inherent nature of a proposed settlement of a collective action, and an employee must affirmatively opt in to be bound and receive settlement proceeds. Such opt-in collective action settlements have been routinely approved by judges in this Circuit. *See, e.g.*, *Tart v. Lions Gate Entm't Corp.*, No. 14-CV-8004, 2016 WL 10537385, at *1 (S.D.N.Y. May 16, 2016) (granting final approval to FLSA settlement created via collective action certified only for settlement, and where opt-in period began after preliminary approval of settlement).

The proposed intervenors have filed a separate FLSA complaint in another District. Nothing prevents the proposed intervenors from pursuing their FLSA claims in *Romero* while choosing not to opt into *Brack*. *See, e.g.*, *Holocaust Victim Assets*, 225 F.3d at 199 ("Because appellants remain free to file a separate action, they have not established that they will be prejudiced if their motion to intervene is denied.").

Moreover, the only reason that some of the *Romero* class members are receiving notices from the *Brack* case is because the records of NYC Transit suggest—contrary to Schwartz's broad generalization to the contrary—that these individuals were employees of NYC Transit and entitled to settlement proceeds. (Proposed Notice to Settlement-

Eligible Individuals ("*Brack* Notice"), attached as Ex. 5 to Prelim. Settlement Mot., at 3 ("Why did I get this Notice? Defendant's [*i.e.*, NYC Transit's] records show that you were an employee working in a computer-related title for some or all of the time period between February 7, 2015 and October 12, 2017 and received straight time for all hours worked over 40 in a workweek[.]")). Indeed, the initial notices sent to the potential opt-in *Brack* plaintiffs included the gross amount each individual would be entitled to under the settlement for that employment. (*Id*. at 1). No party—and certainly not the proposed intervenors—has come forward to contend they are being offered money by NYC Transit to which they are not entitled to get them to join a settlement and thereby unwittingly release claims against other entities against whom they have legitimate claims.

This appears to be the underlying and unstated premise of the proposed intervenors' objection to the *Brack* settlement release—which releases not only NYC Transit but other entities, including MaBSTOA. That is, the *Romero* parties are concerned that they are being asked to release their claims against MaBSTOA by opting into *Brack*. This is based on the false and unsupported premise that such an employee is not entitled to opt into *Brack*. But as noted there is no evidence that such a bad-faith attempt effort has been initiated; the records of NYC Transit indicate that people receiving notices worked for it. The notice states that opting into the settlement results in the release of claims against NYC Transit and other entities like MaBSTOA for

14

violations by NYC Transit. If an employee does not want to agree to such a release, he can simply choose not to participate and continue to litigate in *Romero*.[4]

Schwartz's arguments about the scope of the release and its alleged impropriety misapprehend the *Brack* settlement and the language of its release. While the "Released Parties" are defined in the settlement to include MaBSTOA and other MTA affiliates or subsidiaries, (*see* Settlement Agreement attached as Ex. 1 to Decl. of Gregory K. McGillivary, attached as Ex. 2 to Prelim. Settlement Mot., at 4, Section 1.bb), the claims any opt-in plaintiffs would be releasing relate only to those FLSA claims against the particular defendant in this case, namely NYC Transit. That is, the release in the settlement agreement releases NYC Transit and its subsidiaries (including MaBSTOA) from claims "relating to any FLSA Claims against Defendant [*i.e.*, NYC Transit]" and "relating to the FLSA claims being settled herein." (*Id*. at 13–14, Sections 15.(a)–(b)). Therefore, the only claims being released against MaBSTOA and other entities other than NYC Transit by the *Brack* plaintiffs are those related to alleged violations of FLSA by NYC Transit.

The proposed intervenors' other arguments about the notices are without merit. They contend that the original notices sent out by the *Brack* parties were unclear as to how the settlement amount was calculated and why a recipient received a notice. (*See* Intervenor Mem. at 6). The actual text of the notice is quite clear. (*See Brack* Notice at 4 ("Defendant provided the plaintiffs' lawyers in this case payroll and hours worked

---

[4] The assertion of a collusive settlement is not borne out by the facts. In addition to what appears to be a significant recovery in light of substantial litigation risks, (*see* Final Settlement Mem. at 16), the settlement was negotiated by a third-party neutral mediator as part of this Court's alternative dispute resolution program. (Order Referring Case to Mediation dated May 14, 2018).

records for each of its employees who: 1) worked for Defendant in a computer-related title for some or all of the time period between February 7, 2015 and October 12, 2017; [and] 2) worked in excess of 40 hours in a workweek[.] . . . The settlement amounts were calculated based on a formula applied to each putative opt-in plaintiff, which takes into account the number of hours you ***actually*** worked over 40 hours in each workweek that you were employed between February 7, 2015 and October 12, 2017[.]") (emphasis in original)). While there is no detail about the exact formula used to calculate the settlement amount, it is clear from the notice that such an amount would be based on the number of hours an individual worked, and that NYC Transit had provided plaintiffs' counsel with a list of employees eligible to opt in and the hours they worked.

The proposed intervenors' repeated assertions that the *Brack* notice caused "a good deal of confusion," (Intervenor Mem. at 6), is unsupported speculation. And Schwartz fails to note his own conduct that resulted in the need for the supplemental notice. His client, Romero, sent an email actively *discouraging* individuals to opt into the *Brack* settlement. The supplemental notice—discussing the *Romero* action—was necessary to address communications he had initiated. Absent his client's discouragement, no supplemental notice would have been necessary. Whatever Schwartz's motivations for discouraging individuals from opting into the *Brack* settlement may be, the reasons offered for providing yet another notice are baseless.[5] There has been no evidence submitted—either by declaration or through other means—

---

[5] Schwartz strongly implies that the *Brack* plaintiffs took steps to frustrate the *Romero* litigation. The timing of the *Romero* litigation, which was initiated after the settlement in this case was subject to preliminary approval and notice was distributed, suggests the opposite.

which suggests that any member of the *Romero* class was confused by the original or Supplemental Notice. Nor has any evidence been provided to demonstrate the detrimental effect—if any—the collective action settlement could have on a class member in *Romero* if she chooses not to participate in the collective action. Despite filing multiple letters, a motion, and his own declaration, Schwartz has offered no details about any of the employees he represents to suggest that the *Brack* notice had a particular impact upon a specific identified employee.

The proposed intervenors also argue that the supplemental notice the *Brack* parties mailed in response to Romero's email painted the *Romero* action in a false and negative light. (*Id*. at 7). Again, not so. (*Compare id*. ("The [Supplemental] Notice states that damages in the *Romero* case can only relate back to January 24, 2016, even though our New York State and overtime and equal protection claims have a six-year statute of limitations[.]"), *with* Proposed Suppl. Notice, attached as Ex. 1 to Suppl. Notice Mem., at 2 ("[T]he only claims involved in [*Brack*] are claims for unpaid overtime under the Fair Labor Standards Act. If you file a Consent to Join Form in this case, you are only releasing any claim you may have against Defendant MTA New York City Transit for any violations of or related to the Fair Labor Standards Act during the time period from February 7, 2015 to October 12, 2017, but you are not releasing any other claims. Thus, if you are part of the *Romero* lawsuit that was filed on January 24, 2019 and also join this lawsuit, only your FLSA claims will be resolved by this lawsuit, and your other claims alleged in the *Romero* Complaint will not be affected.") (emphasis omitted)). The supplemental notice made clear that the scope of release in *Brack* related *only* to the FLSA claims, and that only the FLSA claims in *Romero* would not reach as far back as they would in *Brack*. Nothing about that description is inaccurate.

All Schwartz points to in the supplemental notice as being inaccurate is the claim that the "*Romero* lawsuit only involves individuals in Computer-related titles," (Intervenor Mem. at 7), but he provides no reason why this language is damaging to his clients. He says the statement is "untrue," but provides no citation to the *Romero* Complaint to suggest otherwise.[6] And the language is not disparaging or discouraging in any manner about the *Romero* action. Schwartz, not anyone else, is the one who appears to have discouraged individuals to participate in one action over the action in which he is counsel.

## CONCLUSION

For the reasons stated above, Romero and Wellington's motion to intervene is denied.[7] The motion to strike is denied as moot.

SO ORDERED.

*/s/ Sanket J. Bulsara* April 9, 2019
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

---

[6] Indeed, upon review of the *Romero* Complaint filed on January 24, 2019, the employees in *Romero* are alleged to have worked in "computer-related and analyst positions." (*Romero* Compl. ¶ 121). Schwartz fails to explain how the characterization in the supplemental notices is inaccurate.

[7] The Court also has an independent basis to deny the motion to intervene because it was filed late and not in compliance with the Local Rules of this Court. The Court ordered Schwartz to file the motion by March 11, 2019. (*See* Letter Mot. for Extension of Time date Mar. 7, 2019, Dkt. No. 51; Order dated Mar. 8, 2019). Schwartz filed his declaration on that day, which failed to attach a notice of motion or memorandum of law, as required by Local Civil Rule 7.1(a)(2). (*See* Schwartz Decl.). Without permission from the Court, Schwartz then filed his motion to intervene and supporting memorandum on March 14, 2019. (*See* Intervenor Mot.; Intervenor Mem.). That motion adds arguments and case law that are not in Schwartz's declaration.