UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FREDERICK G. BRACK,

                              Plaintiff,

      -against-                                    **ORDER**
                                                                       18-CV-846-SJB

MTA NEW YORK CITY TRANSIT,

                              Defendant.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

        On March 26, 2019, Plaintiff Frederick G. Brack ("Brack") filed two motions, both with the consent of Defendant MTA New York City Transit ("NYC Transit"). The first is a motion for final approval of the parties' settlement of Brack's Fair Labor Standards Act ("FLSA") claims, as required by *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (Mot. for Settlement, Dkt. No. 61). The other seeks attorney's fees and costs. (Mot. for Att'y Fees ("Fees and Costs Mot."), Dkt. No. 62). On April 9, 2019, the Court held a final fairness hearing on the settlement. (Min. Order dated Apr. 9, 2019). For the reasons stated below, the motions are granted.

FACTUAL AND PROCEDURAL HISTORY

        Brack brought this FLSA action on February 7, 2018. (Compl., Dkt. No. 1). On September 24, 2018, after being referred to the Eastern District's FLSA mediation program, the parties reported that they had reached a settlement. (Report of Mediation dated Sept. 24, 2018; Status Report, Dkt. No. 33). After consenting to Magistrate Judge jurisdiction, the parties filed a joint motion for preliminary approval of the settlement. (Mot. for Settlement ("Prelim. Settlement Mot.") dated Nov. 9, 2018, Dkt. No. 35; *see* Settlement Agreement, attached as Ex. 3 to Prelim. Settlement Mot., Dkt. No. 35

("Settlement Agreement")). The settlement is a collective action settlement, and the settling parties consist of two distinct groups of employees: "Reclassification Plaintiffs" and "Computer Plaintiffs." The first includes NYC Transit employees whose titles were converted to non-exempt status under FLSA, and the second includes employees with computer-related titles. (Mem. of Law in Supp. ("Prelim. Mem."), attached as Ex. 1 to Prelim. Settlement Mot., at 3–4). The Court held a preliminary approval hearing on December 5, 2018 and approved the distribution of notices to employees eligible to participate in the settlement. (Min. Entry dated Dec. 6, 2018; Order dated Dec. 6, 2018, Dkt. No. 39).

During the opt-in period, the Court received correspondence from an attorney, Arthur Schwartz ("Schwartz"), who had brought a separate wage and hour action—against a different subsidiary of the MTA—in the Southern District of New York, captioned *Romero v. Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA")*, 19-CV-694 ("*Romero*"). Two of the plaintiffs in *Romero* then objected to the settlement agreement between the parties in *Brack*, and sought to intervene in the action. (Mot. to Intervene dated Mar. 14, 2019, Dkt. No. 56). The Court denied the proposed intervenors' motion to intervene, finding their various objections to be meritless or inapplicable to the *Brack* settlement. *See generally Brack v. MTA N.Y.C. Transit*, No. 18-CV-846, 2019 WL 1547258 (E.D.N.Y. Apr. 9, 2019). The Court's April 9 Order contains additional detail about this case and the settlement, and is fully incorporated into this Order.

On March 26, 2019, the *Brack* parties filed motions for final settlement approval and attorney's fees. Before the final fairness hearing, Schwartz made an appearance on behalf of Christopher M. Sterbenz ("Sterbenz"), an employee who had opted into the

2

settlement agreement, but who now wished to withdraw that opt-in or, if unable to withdraw, to challenge the settlement. (Notice of Appearance dated Apr. 4, 2019, Dkt. No. 64; Decl. of Christopher Sterbenz ("Sterbenz Decl.") dated Apr. 8, 2019, attached as Ex. A to Letter by Christopher M. Sterbenz, Dkt. No. 66, ¶ 3 ("I wanted to join [*Romero*], so on the advice of Mr. Schwartz, I signed a paper . . . revoking my consent to join the *Brack* case. Apparently, I returned the paper too late to get out of the settlement. Now I would like to challenge it.")).

The Court held the fairness hearing on April 9, 2019 and asked plaintiffs' counsel to provide additional material to support the motions, (Min. Order dated Apr. 9, 2019), which they filed on April 11, 2019, (Notice of Suppl. Authority ("Suppl. Notice"), Dkt. No. 70). Counsel confirmed at the hearing that they would be honoring late withdrawals of opt-in agreements, including that of Sterbenz. (Tr. of Proceedings on Apr. 9, 2019 ("Fairness Hr'g Tr."), Dkt. No. 71, at 3:22–25 ("[O]ur position is[,] even though they are out of time, given that they have notified us before the fairness hearing, they should be permitted to revoke their consent to join the action.")). Plaintiffs' counsel also informed the Court that another employee—John Scarpantonio ("Scarpantonio")—wished to withdraw his opt-in and that counsel would permit him to do so. (*Id.* at 3:19–21, 4:11–12 ("There is actually one other individual . . . who filed a similar late request to revoke, that same form that Mr. Sterbenz signed. . . . The other individual is John Scarpantonio."); *see also* Scarpantonio Withdrawal, attached as Ex. A to Notice of Filing dated Apr. 18, 2019, Dkt. No. 74).

In all, other than the 4 named and 16 original opt-in plaintiffs, 412 additional employees submitted consent forms to participate in the *Brack* settlement. (Suppl. Notice at 1). Fifteen individuals who had submitted consents subsequently sought to

3

withdraw their opt-ins, including Sterbenz and Scarpantonio (who submitted their requests after the opt-in period but before the fairness hearing on April 9).  (*Id*.).  These 15 individuals are not included in the settlement.  (*Id*.).

As to attorney's fees and costs, plaintiffs' counsel request an award of $450,000.  (Mem. of Law in Supp. ("Fee and Cost Mem."), attached as Ex. 1 to Fees and Costs Mot., Dkt. No. 62, at 1; Settlement Agreement at 7–8, ¶ 9).  Any portion of this amount that the Court does not award reverts back to NYC Transit.  (Settlement Agreement at 8, ¶ 9.d).

## DISCUSSION

I.  <u>Settlement Approval under *Cheeks*</u>

A settlement that disposes of FLSA claims with prejudice must be approved by the Court.  To approve such a settlement, the Court must find that the agreement is fair, *i.e.*, that it "reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching."  *Le v. SITA Information Networking Computing, USA, Inc.*, 2008 WL 724155 (E.D.N.Y. Mar. 13, 2008) (internal quotations and citation omitted); *see also Cheeks*, 796 F.3d at 207 (requiring court approval in FLSA actions "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees").

In determining whether a FLSA settlement is fair, the Court will consider the "totality of the circumstances," as well as the following general criteria: (1) "the plaintiff's range of possible recovery," in light of the "seriousness of the litigation risks faced by the parties"; (2) the amount of attorney's fees "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [does not] adversely affect the extent

4

of the relief counsel [procured] for the clients"; (3) the nature of the waiver or release of claims; and (4) the presence of any other provisions that may call into question the fairness of the agreement, such as an overbroad confidentiality provision. *See Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335–37 (S.D.N.Y. 2012) (quotations omitted); *see also Cheeks*, 796 F.3d at 206 ("Examining the basis on which district courts recently rejected several proposed FLSA settlements highlights the potential for abuse in such settlements, and underscores why judicial approval in the FLSA setting is necessary, [such as] (1) a battery of highly restrictive confidentiality provisions . . . in strong tension with the remedial purposes of the FLSA; (2) an overbroad release that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues; and (3) a provision that would set the fee for plaintiff's attorney at between 40 and 43.6 percent of the total settlement payment[.]") (quotations omitted).

     A.     <u>Range of Recovery</u>

The Court finds that the settlement amount as reflected in the proposed settlement agreement and in the supplemental materials provides the plaintiffs with a recovery that is substantial and fair, particularly in light of the litigation risks faced by both parties. In total, the plaintiffs will receive $577,021.36 (including service awards of $6,250) after attorney's fees and costs are excluded from the fund. (Settlement Amounts Spreadsheet, attached as Ex. A to Suppl. Notice, Dkt. No. 70, at 10).

Plaintiffs' counsel represent that the most the lead, named, original opt-in, and reclassification plaintiffs and employees could possibly recover is $1,377,541.61 in unpaid overtime and liquidated damages. (Suppl. Notice at 3). They also represent that the most the computer employees could recover is $299,025.67. (*Id.*). Alternatively,

5

counsel contend that if plaintiffs are unable to recover liquidated damages, the most they could receive in unpaid overtime is $668,770.81 for lead, named, original opt-in, and reclassification plaintiffs and employees, and $149,512.84 for computer employees. (*Id.* at 2).

For employees in the Reclassification collective, this means their settlement amounts include 76.56% of the total unpaid overtime they could recover for the relevant three-year period (from February 7, 2015 to when the Complaint was filed), exclusive of liquidated damages with interest. (Mem. in Supp. ("Final Settlement Mem."), attached as Ex. 1 to Mot. for Settlement, Dkt. No. 61, at 15). For the Computer employees over the same period, the settlement gives them 29.06% of their possible unpaid wages over three years. (*Id.* at 15). If Plaintiffs were unable to demonstrate that there was a willful FLSA violation—and the statute of limitations was therefore only two years—the recovery would be 100% of unpaid overtime for Reclassification employees and 42.04% of backpay for Computer employees. (*Id.*). Considering the significant litigation risks the plaintiffs face, these percentages represent a recovery that is fair and reasonable. (*E.g., id.* at 16 ("Defendants raised facts that could have led to summary judgment and/or a lengthy trial on the merits of the potentially applicable exemptions, damages, and/or decertification of the putative collective(s). Further, given that a large number of Plaintiffs exceeded the income level of the 'highly-compensated employee' exemption, these individuals would be less likely to prevail on the merits than others.")). Other FLSA settlements with similar—or even smaller—percentages of recovery have been approved by courts in this Circuit. *See, e.g., Cumbe v. Peter Pan Donuts & Pastries Inc.*, No. 16-CV-392, 2018 WL 3742689, at *1 (E.D.N.Y. May 15, 2018) ("Plaintiff will receive about 53% of his maximum recovery, which is in line with the proportion recovered in

6

similar cases where courts have approved a settlement."), *report and recommendation adopted*, 2018 WL 3742634 (May 30, 2018); *Rodriguez-Hernandez v. K Bread & Co., Inc.*, No. 15-CV-6848, 2017 WL 2266874, at *4 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks).

Lastly, the settlement agreement was negotiated at arm's length, (*see* Final Settlement Mem. at 16–17), which suggests there was no overreaching by any employer or plaintiffs' counsel in an attempt to coerce an unfair settlement. Indeed, the settlement was negotiated by a third-party neutral mediator as part of the Eastern District's alternative dispute resolution program. (Order Referring Case to Mediation dated May 14, 2018).

### B. Attorney's Fees and Costs

The motion for attorney's fees requests fees and costs in the amount of $450,000. While considerable, the Court approves the fee and cost request. *See* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

The amount of requested attorney's fees and costs equals one-third of the settlement fund of $1,350,000 made available by NYC Transit. (*See* Settlement Agreement at 6–7, §§ 5, 9(a) (allocating no more than $723,333 to reclassification employees, no more than $176,667 to computer employees, and no more than $450,000 to attorney's fees and costs)). While the amount sought—$450,000—is substantial, the one-third portion allotted to fees and costs from the fund is in line with what courts have approved in other fund-based FLSA settlement agreements. *See, e g., Kochilas v. Nat'l Merch. Servs., Inc.*, No. 14-CV-311, 2015 WL 5821631, at *9 (E.D.N.Y. Oct. 2, 2015)

7

("In choosing the proper baseline for calculation of fee percentage, our Circuit case law directs courts to focus on fairly compensating counsel for work actually performed, given that *the entire fund, and not some portion of it, is created through the efforts of counsel* at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.") (emphasis added) (citing *Alleyne v. Time Moving and Storage, Inc.*, 264 F.R.D. 41, 58–59 (E.D.N.Y. 2010)) (quotations and alterations omitted). While in some cases counsel seeks a fee award of one third *and* cost reimbursement, the $450,000 recovery in this case is inclusive of both fees and costs. *See, e.g.*, *Johnson v. Brennan*, No. 10-CV-4712, 2011 WL 4357376, at *12–13 (S.D.N.Y. Sept. 16, 2011) (approving "an award of attorneys' fees in the amount of 33% of the Settlement Fund . . . and reimbursement of $14,000 in out-of-pocket expenses that were incurred in successfully prosecuting this action"). This is not a case where the percentage of the fund claimed by plaintiffs is small and less than 10% of the fund amount, while the fees recovered are grossly disproportional and exceed the plaintiffs' recovery. Here, the plaintiffs are receiving 43% of the settlement fund,[1] a percentage that exceeds that which their counsel are seeking. And 64% of the fund allocable to employees ($900,000) is being recovered by those employees who are participating.

An award of the full amount of the requested fees and costs will not deprive any plaintiffs of their potential settlement amounts, and therefore also counsels in favor of approval. That is, the settlement agreement provides that any attorney's fees and costs the Court declines to approve revert back to NYC Transit, rather than return to the

---

[1] This is calculated by dividing the settlement amount plaintiffs will receive from the fund, namely $577,021.36, by the total amount in the fund, which is $1,350,000.

settlement fund or to any particular plaintiffs. (Settlement Agreement at 7, ¶ 9(d) ("Any portion of the Attorneys' Fees not approved by the Court or not sought by Plaintiffs' counsel shall automatically revert back to the Defendant.")). The parties confirmed this at the fairness hearing. (Fairness Hr'g Tr. at 9:7–13). The Court therefore approves the $450,000 fee and cost request. *See, e.g.*, *Karic v. Major Auto. Cos.*, 09-CV-5708, 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016) (approving attorney's fees in the amount of one-third of the settlement fund and noting that "Courts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund"); *Johnson*, 2011 WL 4357376, at *12.

    C.    <u>Nature of the Waiver</u>

The nature of the release in the settlement agreement is limited in scope and also weighs in favor of settlement approval.

By opting into the settlement, the plaintiffs agree to release only their potential FLSA claims, not any other wage and hour claims; nor is the waiver a general release of all possible claims against NYC Transit. (Settlement Agreement at 13–14, § 15 ("[E]ach [plaintiff] who has submitted a claim . . . fully release[s] and discharge[s] the Released Parties . . . from any and all Fair Labor Standards Act claims[.]")). Given the narrow release in the settlement agreement, the Court finds that this portion of the settlement is appropriate.[2] *See, e.g.*, *Weston v. TechSol, LLC*, No. 17-CV-0141, 2018 WL 4693527, at *5 (E.D.N.Y. Sept. 26, 2018) (finding in a FLSA settlement that "the releases to be

---

[2] And while the putative intervenors raised issues about the scope of the release, the Court found those objections to be without merit. *See Brack*, 2019 WL 1547258, at *7.

9

executed are fair and reasonable and limited to the wage claims that the participating collective members have against defendant").

    D.    Other Provisions

Finally, there are no other provisions that call into question the fairness of the agreement. For example, the settlement agreement does not impose a duty of confidentiality that would make the Court question whether the agreement was the product of overreaching. *See, e.g.*, *Cumbe*, 2018 WL 3742689, at *1.

II.    Objections to the Settlement

As part of the settlement process, the *Brack* parties informed employees who opted in of their ability to attend and object at the final fairness hearing. (Prelim. Mem. at 6–7; *id.* at 14–15 ("[U]pon preliminary approval, all Opt-In Plaintiffs will be informed of the settlement terms, and they will be informed of their opportunity, if they so choose, to object to the settlement terms on an individual basis.")). Plaintiffs' counsel represented at the fairness hearing that no opt-in plaintiffs expressed objections to them about the settlement agreement. (Fairness Hr'g Tr. at 6:25–7:2 ("Ms. Nobile: . . . [W]e haven't received any objections from any individuals who opted in to the settlement and remain opt-in plaintiffs at this point. We received one dispute where an individual had a question about basically how the weeks or work were calculated. . . . But outside of that, we've received no objections from any opt-in plaintiff. All we have received are the requests to revoke, and those individuals are no longer opt-ins to this case. The Court: Did the defendants receive any objections? Mr. Fox: No.")).

Sterbenz did file objections to the settlement without knowing that his opt-in withdrawal would be honored. (Letter by Christopher M. Sterbenz dated Apr. 8, Dkt. No. 66; Sterbenz Decl. ¶ 3). Despite the fact that Sterbenz was permitted to withdraw

10

his opt-in and currently has no standing to object to the settlement, the Court has independently reviewed his objections. They repeat the arguments made in the motion to intervene, which the Court found to be without merit. *See generally Brack*, 2019 WL 1547258. For that reason, the Court finds the objections baseless and immaterial to approval of the settlement.

## CONCLUSION

For the reasons explained above, the Court grants the motions and finds that:

1. The settlement agreement satisfies *Cheeks*; and
2. Plaintiffs' counsel is entitled to an award of $450,000, inclusive of fees and costs.

The parties are directed to file a stipulation of dismissal by **May 10, 2019**.

SO ORDERED.

*/s/ Sanket J. Bulsara* April 26, 2019
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

11